UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 13-127-HRW-CJS

FRED L. MANNING, ET AL.                                                              PLAINTIFFS

v.       **REPORT AND RECOMMENDATION**

ARCH WOOD PROTECTION,
INC., ET AL.                                                                          DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiffs Fred and Linda Manning filed this product liability action against Defendants Arch Wood Protection, Inc. (Arch), Osmose, Inc. (Osmose), Koppers Inc. (Koppers), Langdale Forest Products Company (Langdale), T.R. Miller Mill Co., Inc. (T.R. Miller), and Chemical Specialties, Inc. (CSI). (R. 1). Before the Court are Defendants Arch, Osmose, Koppers, and T.R. Miller's Joint Motion to Dismiss (R. 15), and CSI's Motion to Dismiss (R. 16). Plaintiffs have filed their respective Responses (R. 23, 25), to which these Defendants have filed Replies (R. 24, 26). This matter has been referred to the undersigned for preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (R. 18). For the reasons that follow it will be **recommended** that the Motions to Dismiss be **denied.**

**I.      FACTUAL BACKGROUND**[1]

Plaintiff Fred Manning worked as a line mechanic on a line crew for Kentucky Power Company (Kentucky Power) from May 16, 1990, to January 7, 2013. (*See* R. 1, at ¶ 12). Manning

---

[1]The facts asserted in Plaintiffs' Complaint are accepted as true for purposes of considering Defendants' threshold dismissal motions.

claims he was exposed to toxic levels of arsenic contained in chromated copper arsenate (CCA)—a substance used to preserve the wood in utility poles and cross-arms—during his employment at Kentucky Power. (*Id*. at ¶¶ 3, 13). He was allegedly exposed to CCA while handling, sawing, and drilling CCA-treated wood as part of his employment duties, as well as through fighting fires on the CCA-treated utility poles. (*Id*. at ¶ 14). He claims he "was poisoned" by his exposure to arsenic in the CCA-treated utility poles and that he has suffered health problems. (*Id*. at ¶¶ 13, 33, 47).

Plaintiffs allege that Defendants Arch, Osmose and CSI manufactured CCA. (*Id*. at ¶ 2). They further allege that from 1981 to 2013, Defendants Koppers, Langdale, and T.R. Miller purchased the CCA preservative from Arch, Osmose and CSI to treat utility poles and cross-arms that were sold to Kentucky Power. (*Id*. at ¶¶ 3, 45). Plaintiffs claim that Arch, Osmose and CSI knew of the health hazards caused by CCA exposure, but failed to warn of its danger and deceptively persuaded the EPA to eliminate the proposed mandatory warning labels for CCA treated wood. (*Id*. at ¶¶ 15, 17-27, 31). In addition, Plaintiffs assert that despite knowing of the hazards of CCA exposure, Arch, Osmose and CSI represented that CCA treated wood could be handled in the same manner as untreated wood. (*Id*. at ¶¶ 30, 31, 34). Plaintiffs further allege that all Defendants knew or should of known of the dangers associated with CCA exposure, yet failed to warn of its hazards, to Fred Manning's injury. (*Id*. at ¶¶ 28, 31-38, 46-47). Linda Manning asserts that as a result of her husband's injuries, she has suffered a deprivation of the benefits of their relationship. (*Id*. at ¶ 50).

## II. STANDARD OF REVIEW

When adjudicating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007)). "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Although the complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff[s'] obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In considering a motion to dismiss, the Court is required to "accept all the Plaintiffs' factual allegations as true and construe the complaint in the light most favorable to the Plaintiffs." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005). The Court need not, however, accept as true legal conclusions cast in the form of factual allegations if those conclusions cannot be plausibly drawn from the facts, as alleged. *See Iqbal*, 556 U.S. at 678.

### III. ANALYSIS

#### A. Plaintiffs' Complaint Sufficiently Alleges the Defendants' Products Caused Fred Manning Harm

Defendants Arch, Osmose, Koppers, T.R. Miller and CSI assert Plaintiffs fail to properly allege that they manufactured, sold, or distributed the specific product that allegedly caused Fred Manning's injury, and therefore they are entitled to be dismissed from this action. (R. 15-1, at 6-9; R. 16, at 3-7). However, Plaintiffs maintain, and the Court agrees, that they have adequately pled that the moving Defendants manufactured and distributed the product causing Fred Manning's injury.

Plaintiffs assert a failure to warn claim against Defendants. "A threshold requirement of any products-liability claim is that the plaintiff assert that the defendant's product caused the plaintiff's

injury." *Smith v. Wyeth, Inc.*, 657 F.3d 420, 423 (6th Cir. 2011), *cert. denied*, __ U.S. __, 132 S. Ct. 2103 (Apr. 30, 2012) (citing *Holbrook v. Rose*, 458 S.W.2d 155, 157 (Ky. 1970)). Thus, to survive a motion to dismiss, Plaintiffs must have asserted sufficient allegations to allow at least a reasonable inference that these Defendants made, sold or distributed the product causing Fred Manning's injury. *In re Darvocet*, 856 F. Supp. 2d 904, 908 (E.D. Ky. 2012).

Plaintiffs make the following allegations in their Complaint:

2. [Arch, Osmose, and CSI] manufactured the arsenic-based pesticide known as Chromated Copper Arsenate (CCA), which is used as a preservative to treat the utility poles and cross-arms[.] . . .

3. During the time period of approximately 1981 to 2013, [Koppers, Langdale, and T.R. Miller] purchased the CCA preservative from Arch, Osmose and CSI to treat utility poles and cross-arms, which were sold to Plaintiff Fred Manning's, employer, Kentucky Power Company ("Kentucky Power"), in Ashland, Kentucky[.]

. . .

12. Fred Manning worked for Kentucky Power on the line crew as a line mechanic from May 16, 1990 to January 07, 2013.

13. The Plaintiff, Fred Manning, was poisoned by exposure to chromium, copper, and, in particular arsenic released from CCA treated utility poles and cross-arms while employed by Kentucky Power.

14. Mr. Manning was exposed to arsenic, chromium, and copper on and in CCA treated wood for twenty-three (23) years by handling, sawing, and drilling the CCA treated wood as a part of his employment. Mr. Manning used chainsaws to saw the CCA treated wood. Mr. Manning used electric, gas-powered, and pneumatic drills to drill the CCA treated wood. In addition, Mr. Manning was exposed to arsenic, chromium, and copper as a result of fighting and extinguishing hundreds of fires on CCA treated utility poles as part of his employment.

. . .

33. On April 26, 2013, Mr. Manning was diagnosed with adverse health effects consistent with significant exposure to arsenic from the CCA utility poles he handled, sawed, drilled, and extinguished fires. These health effects included: headache,

confusion, visual changes, heart palpitations, nose bleed, dizziness, joint pain, nausea, skin cancer, severe sinus disease, bloody stools, hearing loss, allergic rhinitis, loss of sensitivity in skin, bronchitis, fatigue, polyps in nose, shortness of breath, cough, depression, anxiety, suicidal thoughts, metallic taste in mouth, and vomiting.

. . .

45. The wood treaters, Koppers, Langdale and T.R. Miller, purchased the CCA preservative that they used to treat the CCA treated utility poles and cross-arms from the chemical manufacturers, Arch, Osmose and CSI.

. . .

47. As a direct and proximate result of Defendants' defective and unreasonably dangerous product, Mr. Manning was poisoned by the arsenic, chromium and copper on and in CCA utility poles and cross-arms by using, handling, sawing and drilling the CCA treated wood, and by extinguishing CCA treated utility pole fires.

(R. 1).

These allegations taken together sufficiently identify the moving Defendants as having either directly manufactured the CCA or having purchased the CCA from the chemical manufacturers and used it to treat its products, which it then sold to Fred Manning's employer during his employment. Further, Plaintiffs allege that all of the Defendants knew of the dangers of CCA exposure and yet failed to warn of its dangers, to Fred Manning's injury. (R. 1, at ¶¶ 28, 35, 37, 46-47). These allegations are sufficient to withstand a motion to dismiss. *See Smith v. Univar USA, Inc.*, No. 12-134-ART, 2013 WL 1136624, at *4 (E.D. Ky. Mar. 18, 2013) (complaint sufficient to withstand motion to dismiss where allegations were that all defendants provided chemical at issue to plaintiffs' employer during the entire period plaintiffs worked at plant).

Moving Defendants argue that the claims against them should be dismissed for the same reasons Xanodyne Pharmaceutical was dismissed in *In re Darvocet*, 856 F. Supp. 2d at 908. However, as Judge Reeves explained, the plaintiffs in that case alleged that they either ingested

5

another company's product, alleged they did not know which defendant sold or manufactured the product they ingested, or failed to provide factual allegations regarding the relevant time frame in which the product was ingested. (*Id.*). The case at bar is distinguishable, as explained above, because Plaintiffs specifically alleged Fred Manning was injured by the wood treating Defendants' purchase and use of the chemical manufacturers' CCA on the utility poles and cross-arms sold to Mr. Manning's employer during the relevant time frame. These allegations withstand a motion to dismiss.

### B. Plaintiffs' Complaint Adequately Alleges that He was Harmed by Arch and Osmose's CCA

Defendants Arch and Osmose argue that they should be dismissed from this action because Plaintiffs concede that they did not manufacture, sell or distribute the utility poles that allegedly harmed Fred Manning. (R. 15-1, at 9). They further argue that Plaintiffs allege only that these two Defendants manufactured the CCA solution that was then used by the wood treating Defendants to treat the utility poles and cross-arms sold to Fred Manning's employer. Arch and Osmose argue that these allegations are insufficient for the Court to draw a reasonable inference they are liable for Mr. Manning's alleged injuries on a product liability claim.

Plaintiffs' Complaint, however, contains sufficient allegations that Fred Manning was harmed by the arsenic contained in the CCA produced by Arch and Osmose. (R. 1, at ¶¶ 3, 5-14, 32, 33, 42, 45, 47). The Complaint also contains sufficient allegations that these two Defendants had knowledge of the dangers of their product yet failed to provide warnings. (*Id.* at ¶¶ 15-18, 21, 23, 24, 27, 29, 31, 34-38, 41-42). These allegations are sufficient to allow a reasonable inference that

Arch's and Osmose's products caused Fred Manning's injury. *See Smith*, 2013 WL 1136624, at ** 3-4.

C.  **Complaint Sufficiently alleges Chemical Manufacturers' Product Unreasonably Dangerous as to Withstand Motion to Dismiss Plaintiffs' Failure to Warn Claim**

Arch, Osmose and CSI argue that as manufacturers of CCA, they have no duty to warn the end-user of potential risks associated with products that were treated with CCA. The presiding District Judge, however, has ruled in two factually similar cases that the CCA manufacturers were not entitled to dismissal at this stage of the litigation because the complaints therein set forth sufficient dangers of CCA "to raise a reasonable expectation that discovery will reveal evidence of [the requisite elements of his claim]." *See Stevens v. Arch Wood Prot., Inc.*, No. 0:12-46, at Dkt. No. 31, at 5 (E.D. Ky. Feb. 21, 2013); *McCarty v. Arch Wood Prot., Inc.* No. 0:11-109, at Dkt. No. 53, at 5-6 (E.D. Ky. June 14, 2012) (finding complaint alleged sufficient dangers of CCA to render plaintiffs' claims plausible).

The Court explained in *Stevens* and *McCarty* that the chemical manufacturers' reliance on *Worldwide Equipment, Inc. v. Mullins*, 11 S.W.3d 50 (Ky. Ct. App. 1999) was misplaced. The Court explained:

> *Mullins* limits a manufacturer's liability in situations where its product, which was not defective in and of itself, was incorporated into a larger product which was, ultimately, defective in some way. Whereas, in this case, it is not the final product which Plaintiffs claim is the cause of their damages, it is component itself -the CCA. Plaintiffs argue that it is not a benign component, but, rather, a hazardous material in and of itself. As such, *Mullins* is not dispositive.

*McCarty*, No. 0:11-109, Dkt. No. 53, at 5-6; *see also Stevens*, No. 0:12-46, Dkt. No. 31, at 4.

Arch, Osmose and CSI argue that Plaintiffs have not alleged that their product was defective, but only that it failed to warn of the dangers of working with the end-product, the CCA-treated utility

7

poles and cross-arms. However, as explained above, Plaintiffs allege that Arch, Osmose and CSI knew of the dangers created by exposure to their product, but failed to warn of the dangers. (R. 1, at ¶¶ 15-18, 21, 23, 24, 27, 29, 31, 34-38, 41, 42). Plaintiffs further allege that not only did these Defendants not warn of the dangers associated with their product, but that they made false representations to the United States' Environmental Protection Agency (EPA) and members of Congress that warnings were not necessary on end-products coated in CCA. (*Id*. at ¶¶ 19-22, 26). Plaintiffs have also alleged that Arch fraudulently concealed the known hazards of its product by advertising that smoke exposure from the burning of CCA-treated wood is no more hazardous than smoke from untreated wood. (*Id*. at ¶ 30). They further assert that Arch, Osmose and CSI falsely and fraudulently represented that CCA-treated wood could be handled in the same manner as untreated wood, knowing this claim was not true. (*Id*. at ¶¶ 34-35).

Under Kentucky law, if a "component part is not defective when sold by its manufacturer, then, no duty to warn can attach to the component manufacturer." *Waterfill v. National Molding Corp.*, 215 F. App'x 402, 405 (6th Cir. 2007). Kentucky "[c]ourts have distinguished three types of product defects: (1) manufacturing defects or deviations from the product's design that create unreasonable risks of harm; (2) design defects or unreasonable risks of harm inherent in the product's design; and (3) warning defects or unreasonable risks of harm that could have been reduced or avoided by the provision of reasonable instructions or warnings." *Edwards v. Hop Sin, Inc.*, 140 S.W.3d 13, 15 (Ky. Ct. App. 2003) (citing *Ulrich v. Kasco Abrasives Co.*, 532 S.W.2d 197, 200 (Ky. 1976)). Thus, "a product may be 'defective' when it is properly made according to an unreasonably dangerous design, or when it is not accompanied by adequate instructions and warnings

of the dangers attending its use." *Vaughn v. Alternative Design Mfg. & Supply, Inc.*, No. 6:07-cv-429, 2008 WL 4602960, at *6 (E.D. Ky. 2008) (citing *Ulrich*, 532 S.W.2d at 200).

Plaintiffs have asserted sufficient allegations that Defendants Arch, Osmose, and CSI knew that absent warnings of proper handling, the CCA they each manufactured was unreasonably dangerous. (R. 1, at ¶¶ 5, 15-31, 34-39, 41-42, 46). Thus, as in *McCarty* and *Stevens*, Plaintiffs have asserted sufficient allegations to distinguish the component part at issue here, the CCA, from the application of the rule discussed in *Mullins*, as Plaintiffs have made sufficient allegations that CCA is in and of itself a dangerous product that requires appropriate warnings.[2] (*Id.*).

Further, the case at bar is procedurally distinguishable from those cited by Defendants, wherein the courts granted motions for summary judgment after finding there was no evidence that the component part itself was unreasonably dangerous. *See, e.g., Waterfill,* 215 F. App'x at 405 (component part manufacturer granted summary judgment because no evidence buckle on safety harness was itself unreasonably dangerous); *Jacobs*, 67 F.3d at 1236-42 (affirmed summary judgment upon finding product not in and of itself dangerous or defective; even if duty to warn existed, evidence established that defendant provided sophisticated intermediary all necessary warnings); *Childress v. Gresen Mfg. Co.*, 888 F.2d 45 (6th Cir. 1989) (affirmed summary judgment to non-defective component part manufacturer, applying Michigan law); *Trek Bicycle Corp. v. Mitsui Sumitomo Ins. Co.,* No. 5:05-cv-44-R, 2006 WL 1642298, at *4 (W.D. Ky. 2006) (insurance

---

[2]Defendants Arch and Osmose argue that this case is factually similar to *Jacobs v. E.I. du Pont de Nemours & Co.*, 67 F.3d 1219 (6th Cir. 1995). However, in *Jacobs*, which was before the court on summary judgment motion, the court found no evidence was presented that the component part, the plastic used in the TMJ implants, was itself defective and, therefore, the manufacturer did not have a duty to warn under Ohio law. *Id.* at 1241-42. Moreover, the court found that even if a duty to warn existed, the evidence established that the manufacturer fulfilled its duty under Ohio law by providing all necessary warnings to the sophisticated intermediary who manufactured the product. *Id*. at 1238-41.

company granted summary judgment upon finding no evidence brake lever its insured manufactured was defective).

Here, Plaintiffs' Complaint is reviewed under the applicable standard for a motion to dismiss. As explained above, the Complaint pleads facts sufficient to allow the Court to draw a reasonable inference that the moving Defendants are liable for their failure to warn of the allegedly unreasonably dangerous product. Thus, Plaintiffs have stated a claim for relief that is plausible on its face.

### D. Linda Manning's Loss of Consortium Claim Withstands CSI's Motion to Dismiss

Defendant CSI seeks dismissal of Linda Manning's claim for loss of consortium. (R. 16, at 9). CSI admits that "Kentucky recognizes a statutory claim for loss of consortium in a spouse whose husband or wife has been injured," but argues that since Mr. Manning has failed to adequately plead his own claim against CSI, Mrs. Manning's derivative claim must also be dismissed. (*Id.*).

Given the Court's finding that Plaintiffs have adequately pled the products liability claim against CSI, Linda Manning's claim for loss of consortium remains viable. *See Gerhardt v. Cattron-Theimeg, Inc.*, No. 4:09-cv-29, 2013 WL 4736721, at *14 (W.D. Ky. Sept. 3, 2013) (because some of plaintiff husband's claims were still viable, the loss of consortium claim by his wife also remained viable) (citing *Daley v. Reed*, 87 S.W.3d 247, 250 (Ky. 2002)).

### IV. CONCLUSION

For the reasons stated herein, and the Court being otherwise sufficiently advised,

**IT IS RECOMMENDED** that

1. Defendants Arch Wood Protection, Inc., Osmose, Inc., Koppers Inc., and T.R. Miller Mill Co., Inc.'s Joint Motion to Dismiss (R. 15) be **denied;** and,

2. Defendant Chemical Specialties, Inc.'s Motion to Dismiss (R. 16) be **denied.**

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another's objections within 14 days of being served with those objections. Fed. R. Civ. P. 72(b)(2).

Dated this 20th day of February, 2014.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

G:\DATA\Orders\civil ashland\2013\13-127 manning R&R.wpd